LINN, Circuit Judge,
concurring in part and dissenting in part.
I am pleased to join the majority’s holding that Commerce has the authority to use unaffiliated suppliers’ actual costs of production in calculating CV and to utilize zeroing. I respectfully dissent only from the portion of the opinion concluding that Commerce failed to comply with its obligation under Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co. (State Farm), 468 U.S. 29, 42,103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) and remanding to Commerce for further explanation.
The majority held that Commerce failed to satisfy its State Farm obligation by insufficiently explaining why two of SKF’s concerns about the use of unaffiliated suppliers’ actual cost data were not implicated or why they were outweighed by competing considerations. Maj. Op. at 1373 - 75. Under State Farm, an agency explanation may be unreasonable if the agency “entirely failed to consider an important aspect of the problem.” 463 U.S. at 42, 103 S.Ct. 2856 (emphasis added). “[T]he fact that certain information is not discussed in a Commission determination does not establish that the Commission failed to consider that information. Rather, the Commission need only discuss material issues of law or fact.” Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355-56 (Fed.Cir. 2005) (internal citations and quotations omitted). This court should “uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” State Farm, 463 U.S. at 43, 103 S.Ct. 2856 (internal citations and quotations omitted).
The majority vacates the Trade Court’s decision and remands for Commerce to provide additional responses to two of SKF’s asserted concerns. In my view, neither of SKF’s concerns amount to an important aspect of the problem or a material issue of law or fact.
SKF’s first concern is that it could not change its pricing to avoid dumping because it would have no knowledge of its unaffiliated suppliers’ actual production costs. SKF, however, offers no explanation why it could not simply require the actual cost of production data from an unaffiliated supplier as a condition for purchase. Further, Commerce did not entirely fail to consider this argument. Commerce considered this concern in its response to SKF’s assertion that it faced a catch-22 of either sharing confidential information with a competitor, risking an antitrust violation, or “attempting] to price [its] products without any apparent reference point for normal value.” Decision Mem. at 48. Commerce thus considered, but “disagreefd] with[,] SKF’s assertion.” Id.
SKF’s second concern relates to the potential for Commerce to draw adverse inferences if the unaffiliated supplier fails to *1377 provide cost data. In this case, Commerce did not draw such adverse inferences. Although “Commerce has not stated that it will abandon the practice of using adverse inferences,” Maj. Op. at 1375, when Commerce attempted to do so during the eighteenth review, the Trade Court overturned the drawing of adverse inferences as “contrary to law.” Maj. Op. at 1375 n. 6. SKF’s concern is no longer relevant to this investigation, and any further explanation by Commerce would be advisory at best. Moreover, Commerce did not entirely fail to consider this argument either. Commerce briefly addressed its practice of adverse inferences and simply determined that it would not apply it in this case. See Decision Mem. at 48-49.
In light of the foregoing, it is my view that neither of SKF’s concerns raises an important aspect of the problem or a material issue warranting a vacatur and remand. Commerce has adequately explained its change in practice, adequately considered SKF’s concerns, and Commerce’s path may reasonably be discerned from its decision. Commerce explained that its decision was based upon the statutory emphasis on the use of actual costs, the Statement of Administrative Action’s language contemplating the same, the inability of acquisition costs to properly capture the actual costs of the manufacturer in this situation, and the need for more consistency. Decision Mem. at 47-49. Not only did Commerce provide a reasoned explanation for its change in practice after sixteen years, but Commerce warned SKF during the fifteenth administrative review that it would be changing to this methodology and did not implement the change until two review years later, during the seventeenth administrative review. Even if Commerce’s explanation of the two concerns raised by SKF and found wanting by the majority lacked ideal clarity, a point with which I disagree, this court should “uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” State Farm, 463 U.S. at 43, 103 S.Ct. 2856.
Because Commerce sufficiently addressed all material concerns and its path can be reasonably discerned, I see no need to remand for further explanation and would affirm.